IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,         ) ) ) | |
| Plaintiff,         ) ) | No. 09 C 4272 |
| and         ) ) | |
| RON ADDISON, et al.,         ) ) | Judge Virginia Kendall |
| Intervening Plaintiffs,         ) ) ) | Magistrate Judge Arlander Keys |
| v.         ) ) ) | |
| WRS INFRASTRUCTURE AND ENVIRONMENT, INC., d/b/a WRS COMPASS,         ) ) ) ) | |
| Defendant.         ) | |

## MEMORANDUM OPINION AND ORDER

The EEOC filed this action on behalf of a group of employees, alleging that WRS Infrastructure and Environment, which provides environmental remediation services in the public and private sectors and is headquartered in Tampa, Florida, discriminated and retaliated against certain African-American employees, in violation of Title VII of the Civil Rights Act of 1991. More specifically, the EEOC alleged that, since at least December 2006, WRS has engaged in unlawful employment practices by subjecting the named intervening plaintiffs, a class of African-Americans, to harassment and different terms and conditions of employment; the EEOC alleged that WRS held the intervening employees to different work standards, applied

different discipline measures, offered different pay rates, assigned them more demanding work, and assigned them to less desirable equipment. The EEOC also alleged that, since at least July 2007, WRS has engaged in unlawful employment practices, including firing, failing to promote and otherwise intimidating the intervening plaintiffs for opposing the discrimination. The EEOC alleges that WRS unlawfully discriminated against African-American employees and white employees who associated with African-American employees by fostering a racially hostile work environment and subjecting those employees to unequal treatment at WRS' Lake Calumet worksite; it alleges that WRS "tolerated a racially hostile work environment," including one incident on October 11, 2007, when a noose was placed on the work truck of an African-American employee. Motion to Compel, p. 3.

WRS has denied any wrongdoing. Additionally, as an affirmative defense to the allegations, WRS alleged that the intervening plaintiffs' harassment claims were barred because it "exercised reasonable care to prevent and promptly correct any harassing behavior and Plaintiffs unreasonably failed to take advantage of any preventive or corrective opportunities provided by WRS or to avoid harm otherwise." Answer and Affirmative Defenses, ¶4.

As part of the discovery process, the EEOC served WRS with requests seeking, among other things, documents pertaining to the

involvement of Gregory Munson, who has served as WRS' general counsel since February 2007; based in Tallahassee, Florida, Mr. Munson provides legal counsel and advice concerning business affairs, assists with compliance with federal and state laws and regulations affecting the company, and oversees outside litigation counsel. According to the EEOC, Mr. Munson directed, oversaw and participated in the company's investigation of complaints of racial harassment.

WRS declined to produce discovery concerning Mr. Munson: WRS withheld documents pertaining to Mr. Munson's involvement in the company's investigation of racial harassment allegations, claiming attorney-client and work product privileges; additionally, counsel for WRS instructed witnesses not to answer questions regarding the company's investigation and response to the incident involving the noose if the answers would have involved communications with Mr. Munson. According to the EEOC, counsel instructed Richard Scott, who serves as WRS' Program Office Manager and who performed the onsite investigation of the incident, not to answer questions regarding instructions he received from Mr. Munson before he conducted that investigation. See Motion to Compel, p. 4. And counsel instructed Diane Anderson, WRS' Senior Vice President not to testify about her conversation with Mr. Munson concerning WRS' response to the October 11, 2007 noose incident. See Motion to Compel, p. 4.

In contrast, the EEOC argues, WRS has allowed witnesses to testify regarding the substance of some conversations involving Mr. Munson – in particular, those that occurred in the Spring of 2008. WRS has not, however, produced Mr. Munson's notes documenting those conversations. WRS explained its position in a letter dated April 12, 2010:

> As the depositions have revealed to date, Mr. Munson – in his role as General Counsel – acted as a legal advisor by providing advice related to the investigation of the October 2007 noose incident Mr. Munson was not responsible for investigating the incident. Rather, Richard Scott investigated the incident and has testified about his investigation, the facts he discovered and the conclusions he reached. We directed Mr. Scott not to disclose the legal advice he received from Mr Munson because it is protected by the attorney-client privilege. Further, WRS will not produce all documents pertaining to Mr. Munson's involvement in the noose investigation, as those documents are also privileged.
>
> By contrast, when WRS received notice of the EEOC charges filed in March 2008, it retained Seyfarth Shaw to represent it and Mr Munson assumed the role of investigator related to the charge allegations. Because Mr. Munson was not providing legal advice in his investigative capacity, his investigation is discoverable and not protected by the attorney-client privilege. . . . After Mr. Munson investigated the charge allegations, he reverted back to his role as legal advisor for purpose of the defense of the charges and in the subsequent litigation.

April 12, 2010 Letter from Michelle Mellinger of Seyfarth Shaw to Richard Mrizek of the EEOC (attached as Exhibit 9 to the EEOC's Motion to Compel). The EEOC disagreed with WRS' position, explaining that, in its view, WRS had waived any claim of privilege by asserting as a defense the investigation directed

4

and coordinated by Mr. Munson. When the parties' attempts to resolve their dispute failed, the EEOC moved to compel WRS to produce information regarding its investigation of the reported incidents of racial harassment. The parties briefed the motion, and Judge Kendall referred the matter to this Court.

## Discussion

Under the Federal Rules of Civil Procedure, courts should permit "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The attorney-client privilege protects from disclosure "communications made in confidence by a client and a client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice." *Sandra T.E v. South Berwyn School District 100*, 600 F3d 612, 618 (7th Cir. 2009)(citing *Upjohn Co. v. United States*, 449 U.S. 383, 394-99 (1981); *Trammel v United States*, 445 US. 40, 51 (1980)). The privilege "also protects 'statements made by the lawyer to the client . . . in circumstances where those communications rest on confidential information obtained from the client or where those communications would reveal the substance of a confidential communication by the client.'" *Musa-Muaremi v. Florists' Transworld Delivery, Inc.*, No. 09 C 1824, — F.R.D. —, 2010 WL 1930116, at *4 (N.D. Ill. May 13, 2010)(quoting *Rehling v. City of Chicago*, 207 F.3d 1009, 1019 (7th Cir. 2000)). "The work-

5

product doctrine protects documents prepared by attorneys in anticipation of litigation for the purposes of analyzing and preparing a client's case." *Sandra T.E.*, 600 F.3d at 618 (citing Fed.R.Civ.P. 26(b)(3); *United States v. Nobles*, 422 U.S. 225, 238-39 (1975); *United States v. Smith*, 502 F.3d 680, 689 (7th Cir. 2007)).

The EEOC argues that any claim of privilege must fail for three reasons: (1) a company that claims to have a policy of investigating and responding to complaints of discrimination cannot invoke a broad privilege solely because the senior manager responsible for these business functions happens to be an attorney; (2) any claim of privilege is waived where, as here, the defendant asserts its investigation and response as an affirmative defense to the allegations of hostile work environment harassment; and (3) WRS has waived any possible privilege by selectively disclosing Mr. Munson's involvement in the investigation in April 2008.

Any claim of privilege must be considered on a document-by-document basis. *E.g., In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000)(citing *United States v White*, 970 F2d 328, 334 (7th Cir. 1992); *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983)); *EEOC v. International Profit Associates, Inc.*, 206 F.R.D. 215, 218 (N.D. Ill. 2002). Thus, in support of its position that the requested discovery is privileged, WRS

submitted for *in camera* review its privilege log and the documents described therein. The Court has reviewed WRS' submission and has read each and every document included. To summarize very briefly, the first set of documents, those designated with internal numbers 1-7, 9-19, and 21-51, consist of emails between WRS management, including Mr. Munson, relating to the company's initial response to the noose incident and management's report of the incident to the company's board of directors. Document designated PRV 166 is a timeline, prepared for the most part from Richard Scott's perspective; it details the company's awareness of the noose incident, and its response to and investigation of that incident. Documents 280-288 and 300-301 consist of emails regarding corporate remedial action, including the creation of an employee hotline and diversity training; Mr. Munson is included as an addressee. Documents 52-73, 76-81, 88-97, 101-102, 107-108, 112-128, 166-199, 202-239, 241-246, 248-254, 263-273, 279, and 313-317 deal with potential media coverage of matters involving WRS (some related to the racial harassment, some not) and the company's response to the media inquiries, as well as the company's reaction and response to a report that ran on the local news on February 22, 2008. Documents 144-164, 289-292, 296, 298-299, 303-304, and 311 are emails relating to a follow-up story NBC planned to run on April 2, 2008 and WRS' response thereto. Finally, documents 133-143

relate to EEOC charges filed by two laid off employees; they are not related to the October 11, 2007 noose incident. Although Mr. Munson was not included as an addressee on the original email, he was added on a response email, which requested his advice and counsel, and he is either the author or a recipient of the other emails. The charges themselves are also included, along with a marked up copy of the "Notice to Respondents" sent by the EEOC.

Initially, it is clear from reading these documents that Mr. Munson was extremely involved in WRS' investigation of the October 11 noose incident. Zoraida Perez, WRS' Human Resources Director, testified that, as a matter of policy, when a harassment complaint is made, the site manager investigates the matter, working with the General Counsel. Perez Dep., p. 62. She testified that the General Counsel would likely be the person who would know about all complaints of harassment; that he would decide when the investigation of each matter was complete. Perez Dep., pp. 81, 92. Consistent with this policy, Ms. Perez testified that, to her knowledge, the Lake Calumet noose incident was handled by Richard Scott and Greg Munson. Perez Dep., p. 94.

And, in fact, Richard Scott, WRS' program office manager, testified that, initially and throughout the course of his investigation of the noose incident, he had several conversations with Greg Munson. Scott Dep., pp. 127-129.

Diane Anderson, WRS' Vice President of Operations, testified

8

that she learned about the noose incident when Richard Scott called her about it, and that, after Mr. Scott called her, she then notified WRS' human resources department, as well as the general counsel. Anderson Dep., pp. 23-24. She testified that, after informing them about the incident, she "stepped out" of the process, and the investigation was handled by HR, the GC and the program manager. *Id.*, p. 26.

Mr. Munson did not simply direct the investigation from afar; Noah Hunter, a WRS employee who worked at the Lake Calumet site, testified that Mr. Munson personally interviewed him about the noose incident. Hunter Dep., pp. 161-162. At Mr. Hunter's deposition, WRS offered to produce Mr. Munson's notes from that interview, taking the position that the notes were not privileged. *See* Hunter Dep., pp 169-170. This would seem to be consistent with the position stated in Ms. Mellinger's letter. Robert Heck testified that Mr. Munson came to his job site to talk about the EEOC charges; he testified that he met with Mr. Munson for 2 to 3 hours, that they discussed the October 11 noose incident, and that Mr. Munson took notes throughout the meeting. Heck Dep., pp. 275-276.

But the question is not simply whether Mr. Munson conducted a factual investigation; the question is whether he did so in connection with the provision of legal services. *See, e.g., Sandra T.E. v. South Berwyn School District 100*, 600 F.3d 612,

620 (7th Cir. 2009)(holding that when lawyers are "hired in their capacity as lawyers to provide legal services - including a factual investigation - the attorney-client privilege applies to the communications made and the documents generated during that investigation."). Given the nature of Mr. Munson's duties and responsibilities as in-house counsel, the Court finds that he did direct and conduct the investigation in this capacity. Accordingly, the documents and communications at issue would, ordinarily, fall within the scope of the attorney-client privilege.

Unlike the attorney-client privilege, which protects communications made outside the litigation context, the work-product doctrine applies only "when the documents at issue 'can fairly be said to have been prepared or obtained because of the prospect of litigation.'" *Sandra T.E.*, 600 F.3d at 622 (quoting *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976-77 (7th Cir. 1996)). "There is a distinction between precautionary documents 'developed in the ordinary course of business' for the 'remote prospect of litigation' and documents prepared because 'some articulable claim, *likely* to lead to litigation [has] arisen.'" *Sandra T.E.*, 600 F.3d at 622 (quoting *Binks Mfg. Co. v. National Presto Indus. Inc.*, 709 F.2d 1109, 1120 (7th Cir. 1983)). In *Sandra T.E.* the latter was the case; suit had actually been filed. In contrast, the facts here bring this case squarely into

10

the former camp. The EEOC has requested documents relating to the investigation of the October 11 noose incident. When these documents were prepared, no charges had been filed and no lawsuit had been filed. Indeed, the EEOC charges were not filed until March of 2008, five months later. These were precautionary documents prepared in the ordinary course of business, consistent with company policy concerning the handling of internal harassment complaints. WRS has not established that the withheld documents were prepared in anticipation of litigation, and, accordingly, for the bulk of the documents, the work-product doctrine simply does not apply. *See Musa-Muaremi,* 2010 WL 1930116, at *5. That is not the case for the documents relating to the EEOC charges that were actually filed (documents 133-143); those charges do give rise to an articulable claim, and the documents relating to those, some of which even reference the use of documents to defend against the charges, would fall within the protection of the doctrine.

Of course, both the attorney-client privilege and work-product protections may be waived. Here, the Court must determine whether, by asserting its investigation as an affirmative defense to the EEOC's complaint, WRS waived the privilege. The Court must also consider whether WRS waived any applicable work-product protections.

"The attorney-client 'privilege is generally waived when the

client asserts claims or defenses that put his attorney's advice at issue in the litigation.'" *Musa-Muaremi*, 2010 WL 1930116, at *6 (quoting *Garcia v. Zenith Electronics Corp.*, 58 F.3d 1171, 1175 n.1 (7th Cir. 1995)). "Simply denying allegations doesn't amount to a waiver"; rather, for the privilege impliedly to be waived, the holder of the privilege must "use the privileged communications to attack the other side's case." *Robinson v. Morgan Stanley*, No. 06 C 5158, 2010 WL 1050288, at *5 (N.D. Ill. March 17, 2010). That is exactly what has transpired here. As noted above, as an affirmative defense to the plaintiffs' hostile environment allegations, WRS alleged that the intervening plaintiffs' harassment claims were barred because it "exercised reasonable care to prevent and promptly correct any harassing behavior and Plaintiffs unreasonably failed to take advantage of any preventive or corrective opportunities provided by WRS or to avoid harm otherwise." Answer and Affirmative Defenses, ¶4. This defense puts WRS' investigation squarely at issue, and makes WRS' investigation directly relevant. Accordingly, at least with respect to the documents relating to the investigation of the noose incident and the investigation of the EEOC charges, the privilege has been waived. WRS is, accordingly, ordered to produce documents 1-7, 9-19, 21-51, 133-143, PRV 166, 280-288, and 300-301. WRS is further ordered to allow witnesses to testify concerning the company's investigation of the noose

incident, as well as any investigation of complaints of racial harassment made by the plaintiffs. The other categories of documents are not implicated in WRS' defense and, as to those documents, the privilege has not been waived.

## Conclusion

For the reasons explained above, the Court finds that the documents included in WRS' privilege log are, indeed, covered by the attorney-client privilege (most, however, are not protected by the work-product doctrine). The Court also finds that, by asserting the reasonableness of its investigation as an affirmative defense, WRS has waived the attorney-client privilege with respect to communications concerning that investigation. Accordingly, the EEOC's motion to compel is granted as to documents 1-7, 9-19, 21-51, 133-143, PRV 166, 280-288, and 300-301. The motion to compel is otherwise denied.

Dated: June 23, 2010

ENTER:

_____
ARLANDER KEYS
United States Magistrate Judge